IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:13-cv-651

| | |
|---|---|
| THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION d/b/a CONE HEALTH, <br><br> *Plaintiff*, <br><br> v. <br><br> SPRINGFIELD SERVICE CORPORATION d/b/a SPI HEALTHCARE, <br><br> *Defendant*. | **COMPLAINT** |

Now comes Plaintiff The Moses H. Cone Memorial Hospital Operating Corporation d/b/a Cone Health ("Cone Health"), and files this Complaint, showing the Court as follows:

**<u>Jurisdiction and Venue</u>**

1.      Cone Health is a private, Non-Profit corporation organized and existing under the laws of the State of North Carolina maintaining its principal office and place of business in Greensboro, North Carolina.

2.      Defendant Springfield Service Corporation d/b/a SPi Healthcare ("SPi") is a corporation organized and existing under the laws of the State of Illinois maintaining its principal office and place of business in Illinois.

3.      This action is one over which this Court has diversity jurisdiction pursuant

to 28 U.S.C. § 1332 because (a) Cone Health and SPi are citizens of different states, and (b) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.     Venue is appropriate in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391.

## Factual Allegations

5.     Cone Health provides health care services through a network of hospitals and physician offices in central North Carolina (the "Affiliated Health Care Providers").

6.     SPi provides revenue management, health information management, and billing services to health care providers throughout the United States.

7.     Springfield Service Corporation ("SSC") and its subsidiary were rebranded as "SPi Healthcare" in 2011.  SPi is now a subsidiary of SPi Global Holdings, Inc., a company fully owned by Asia Outsourcing Gamma Limited.  CVC Capital Partners, a private equity and investment advisory firm, owns eighty percent (80%) of Asia Outsourcing Gamma Limited.  Philippine Long Distance Telephone Company owns the remaining twenty percent (20%) of the company.

8.     Cone Health and its Affiliated Health Care Providers receive payment for patient services directly from patients and from a variety of third-party payors, which include private insurers, Medicare, and Medicaid.

9.     In August 2011, Cone Health outsourced its claims management and

accounts receivable services to SPi, a company purportedly specializing in health care revenue management, health information management, and billing services.

10.     SPi and Cone Health (collectively, the "Parties") entered into a Master Outsourcing Services Agreement ("Master Agreement") on August 8, 2011.  The Master Agreement determines the scope of the Parties' business relationship.  It provides terms and conditions to govern the outsourcing services SPi would provide to Cone Health and its designated Affiliated Health Care Providers.  An accurate copy of the Master Agreement is attached hereto as Exhibit A.

11.     SPi represented and warranted in the Master Agreement that it would provide billing outsourcing services to Cone Health "in a good, timely, efficient, professional and workmanlike manner" and "with at least the degree of accuracy, quality, efficiency, completeness, timeliness and responsiveness as are equal to or higher than the accepted industry standards applicable to the performance of the same [or] similar services." (Master Agreement § 11.2.)

12.     SPi further represented and warranted that it would use SPi Personnel who are fully familiar with the technology, process and procedures to be used to deliver its services.  (Master Agreement § 11.2.)

13.     SPi further represented and warranted that it would perform its services and all of its obligations under the Master Agreement in compliance at all times with all applicable foreign, federal, state, and local statutes, orders, and regulations, including

3

those of any governmental agency, that are applicable to SPi in providing its services or that would be applicable to Cone Heath if Cone Health were providing the services using its own employees and assets. (Master Agreement §§ 1, 11.3.)

14.     SPi further represented and acknowledged in the Master Agreement that "time is of the essence with respect to the performance of [its] obligations" thereunder. (Master Agreement § 16.15.)

15.     On or about February 1, 2012, the Parties executed "Supplement 1" to the Master Agreement.  Supplement 1 identified the billing services SPi would provide to health care providers whose practices were "owned by or affiliated with" Cone Health, and it established a fee schedule to compensate SPi.  (Supplement 1 § III, IV.)  An accurate copy of Supplement 1 is attached hereto as Exhibit B.

16.     In Supplement 1, SPi agreed, among other things, that it would establish "specific teams" to review denied insurance claims.  The teams would review the claims for the following: corrections to registration or insurance information, required medical records information, patient eligibility, coding related issues, and other issues in order to ensure proper payment.  (Supplement 1 § V.8.)

17.     SPi also agreed in Supplement 1 to provide customer service to all of Cone Health's patients.  SPi agreed to field Cone Health's patients' requests for additional information regarding Cone Health's charges and their questions regarding billing statements.  (Supplement 1 § V.10.)

4

18.     For the past twelve months, Cone Health paid SPi an average of $670,561 per month pursuant to the Master Agreement and Supplement 1 (the "Agreements").

### SPi Fails to Properly Manage Cone Health's Accounts Receivable

19.      SPi failed to manage Cone Health's accounts receivable in a manner that maximizes Cone Health's collections.

20.     Cone Health's average time to recover collections based on patient encounters increased significantly under SPi's supervision.  The industry standard for professional fee recovery is between 35 and 40 days. By September 2012, SPi's average time to recover collections based on patient encounters had risen to 93.7 days, an increase over the average recovery time prior to SPi's involvement.  As of July 2013, the average time to recover collections based on patient encounters was 69 days.  The decrease in Cone Health's time of collection recovery is due in large part to SPi's write-offs of accounts receivable, and not due to its actual collection efforts.  SPi's average recovery time remains well above accepted industry standards.

21.     SPi failed to use diligent collection and follow-up efforts to ensure collection of payable claims.  SPi wrote off almost $7 million of Cone Health's collections between September 2012 and March 2013 on claims that it failed to process timely.  These claims are no longer legally collectable, and SPi's failure to ensure collection cannot be cured.

22.     SPi decided to write off approximately $2.7 million worth of Cone Health's

collections for the months of January – March 2013 (approximately forty percent of the $7 million total) without providing Cone Health with prior notice that it planned to write off these accounts receivable. This failure deprived Cone Health of the chance to work jointly with SPi to investigate these claims and to determine appropriate action for billing prior to SPi taking that action.

23. SPi's mismanagement of Cone Health's accounts receivables and its action to write off approximately $2.7 million without providing Cone Health with notice prior to taking that action are examples of its failure to perform its duties in a good, timely, efficient, professional, and workmanlike manner, and they fall below industry standards.

24. SPi's mismanagement of Cone Health's accounts receivable and its write-offs reduced Cone Health's cash collections by at least $2.8 million.

25. A significant number of aged accounts receivable remain un-worked by SPi, and Cone Health does not know at this time the number of these claims that are collectable. As such, Cone Health has not yet quantified its losses related to these aged accounts receivable.

26. SPi controls the data for aged accounts receivable for Cone Triad Hospitalists, an Affiliated Health Care Provider, on SPi's IDX software system. Cone Health does not have access to the data stored on SPi's IDX system, and it cannot determine the collections issues associated with those claims without SPi's assistance.

27. SPi's mismanagement of Cone Health's collectables caused other damages.

6

Many of Cone Health's health care providers receive compensation based on the collections received from their services. Due to SPi's mismanaged collection efforts, many providers would have experienced reduced compensation. Nevertheless, Cone Health paid its health care providers as if SPi had adequately performed its contractual obligations. Additionally, SPi's mismanagement has negatively impacted Cone Health's patient relationships and has caused a loss of goodwill and reputation.

<u>SPi Fails to Implement a Denial Management Team to Process Denied Claims</u>

28. SPi failed to assign a dedicated denial management team to review and resolve denials of Cone Health's claims as required by Section V.8. of Supplement 1.

29. SPi acknowledges it utilized certain staff members for both collections and denial management functions, without distinguishing the different tasks. To the extent that SPi performed any denial management work at all, the work was performed by SPi's collections staff, which further reduced the collections employees' time for their collections efforts.

30. Additionally, despite Cone Health's requests for monthly reports with detailed analysis of denied claims, SPi consistently failed to provide Cone Health with information sufficient to allow Cone Health and SPi jointly to assess and timely remedy denials.

31. Delivery of denial reports is accepted standard industry practice. SPi should have delivered proper denial reports to Cone Health since Supplement 1's

execution.

32.     SPi's failure to abide by the terms of Supplement 1 is an example of its failure to perform its duties in a good, timely, efficient, professional, and workmanlike manner, and it falls below industry standards.

33.     SPi's failure to abide by the terms of Supplement 1 has reduced Cone Health's cash collections by $1,750,682 due to stale and uncollectable denied claims.

34.     SPi's failure to perform has negatively impacted Cone Health's patient relationships and has caused a loss of goodwill and reputation.

<u>SPi Engages in Improper Billing of Medicaid Beneficiaries</u>

35.     SPi has engaged in improper billing of Medicaid beneficiaries.

36.     Cone Health provides services to Medicaid beneficiaries at a pre-arranged rate.  That rate is below the amount usually and customarily charged for the services.

37.     Medicaid precludes service providers from billing its beneficiaries the balance between the Medicaid rate and the usual and customary billable rate.  *See* 42 C.F.R. § 447.15.  This practice is commonly termed "balance billing."

38.     Nevertheless, SPi has balance-billed numerous Medicaid beneficiaries for services provided by Cone Health and Affiliated Health Care Providers..

39.     Further, SPi has contacted Medicaid beneficiaries, directing them to resolve balances which were never owed.

40.     This practice is an example of SPi's failure to perform its duties in a good,

8

timely, efficient, professional, and workmanlike manner, and it falls below industry standards.

41.     Additionally, this practice is in violation of SPi's obligation to comply at all times with applicable laws and regulations.

42.     This practice negatively impacted Cone Health's patient relationships and has caused a loss of goodwill and reputation.  It also subjects Cone Health to potential government fines and penalties.

<p align="center">SPi Fails to Provide Cone Health with Daily Reconciliation</p>

43.     Despite Cone Health's multiple requests to SPi, SPi failed to provide Cone Health with daily reconciliation of payments received until June 2013.

44.     This reconciliation is accepted standard industry practice to ensure that all patient and third-party payments are posted to patient accounts and reconciled to proper bank statements.

45.     SPi failed to post payments to proper accounts on numerous occasions. Other times, it failed to timely post payments.  Daily reconciliation would have highlighted the entries not properly posted to allow timely action.  This failure resulted in numerous patient complaints regarding payments not posted to their accounts.

46.     SPi's failure to provide a timely daily reconciliation to Cone Health is an example of SPi's failure to perform its duties in a good, timely, efficient, professional, and workmanlike manner, and it falls below industry standards.

47.     This practice negatively impacted Cone Health's patient relationships and has caused a loss of goodwill and reputation.

<u>SPi Fails to Provide Adequate Customer Service to Patients</u>

48.     SPi has failed to provide adequate customer service to Cone Health's patients.

49.     SPi agreed to field Cone Health's patients' requests for additional information regarding Cone Health's charges and their questions regarding billing statements.  (Supplement 1 § V.10.)

50.     On many occasions, SPi referred Cone Health's patients to Cone Health's Affiliated Health Care Providers to answer billing questions SPi's employees should have answered.

51.     SPi failed to provide adequate training to its staff to alleviate this practice.

52.     SPi's failure to provide adequate customer service is an example of SPi's failure to perform its duties in a good, timely, efficient, professional, and workmanlike manner, and it falls below industry standards.

53.     Moreover, it is a failure of SPi's representation and warranty that it would use SPi personnel who are fully familiar with the technology, process and procedures to be used to deliver its services.

54.     SPi's failure to provide adequate customer service has resulted in reduced productivity and administrative costs to Cone Health's administrative staff and has

created unnecessary burden on Cone Health's patients. It also negatively impacted Cone Health's patient relationships and has caused a loss of goodwill and reputation.

<u>Termination of the Master Agreement and Supplemental Agreements</u>

55. The Master Agreement provides for its termination and the termination of supplemental agreements.

56. Cone Health may terminate for cause the entire Master Agreement and any supplemental agreement at any time by giving written notice to SPi when (i) SPi commits a material breach of the Master Agreement or any supplemental agreement which is not cured within sixty days (60) after Cone Health provides notice of the breach or (ii) when SPi commits a material breach of the Master Agreement or any supplemental agreement, which is not capable of being cured within sixty (60) days. (Master Agreement §§ 15.2 (a), (c).)

57. Additionally, Cone Health may terminate the entire Master Agreement and any supplemental agreement after August 8, 2014, without cause at any time after providing SPi six (6) months prior written notice.

58. On May 10, 2013, Cone Health provided notice to SPi that SPi had breached the Master Agreement and Supplement 1 and that it intended to terminate the Agreements effective July 12, 2013, pursuant to Section 15.2(a) of the Master Agreement.

59. SPi responded by letter dated May 30, 2013, in which it acknowledged the

warranty issues detailed above (except the customer service issues) and indicated that the issues would be or had been remedied.

60.     Cone Health denies SPi's ability to cure its breaches.  SPi has not remedied the issues detailed above.

61.     The Master Agreement requires SPi to "promptly correct or cause the correction of the deficiencies giving rise to [its warranty breaches] without charge to [Cone Health].  In the case of any breach of warranty that prevents or substantially interferes with any Recipient's ability to conduct its business," SPi must use its "diligent efforts to correct the deficiency within twenty-four (24) hours" after it "discovers or receives notice of the deficiency."  If the Recipient's full operations have not been restored within that time, SPi "shall immediately commence continuous twenty-four hour per day (on-site as appropriate) correction efforts until full operations have been restored." (Master Agreement § 11.5.)

62.      SPi's breaches of warranty noted above prevent or substantially interfere with Cone Health's ability to conduct its business.  To the extent the Court believes any of the warranty breaches identified above are curable, SPi failed to use diligent efforts to correct the deficiencies, and, upon information and belief, it has not commenced twenty-four hour per day operations to remedy its failures, causing further damage to Cone Health.

63.     Cone Health agreed to suspend its termination notice for one month,

through and including August 12, 2013, while the Parties discussed termination transition resolution.

### Count I: Breach of the Master Agreement and Breach of Warranties

64.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

65.     The Master Agreement is a valid and enforceable agreement between the Parties.

66.     SPi engaged in continuous conduct that amounts to material breaches of the Master Agreement and SPi's warranties and representations in the Master Agreement.

67.     SPi's breaches have not and cannot be cured in sixty (60) days.

68.     SPi's breaches of the Master Agreement and breaches of its warranties have caused direct damages to Cone Health, which include loss of revenue (as identified above), loss of existing physicians, loss of prospective physicians, loss of patients, loss of goodwill and reputation, and potential losses due to fines and penalties.

### Count II: Breach of Supplement 1

69.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

70.     Supplement 1 is a valid and enforceable agreement between the Parties.

71.     SPi has continuously failed to provide the services it agreed to provide

under Sections V.8. and V.10. of Supplement 1, which failures amount to material breaches of Supplement 1.

72. SPi's breaches of Supplement 1 have caused direct damages to Cone Health, which include loss of revenue (as identified above), loss of existing physicians, loss of prospective physicians, loss of patients, loss of goodwill and reputation, and potential losses due to fines and penalties.

## Alternative Claims for Declaratory Judgment

73. SPi now contends that it is not in breach of the Agreements, and it asserts that Cone's termination of the Master Agreement will constitute a breach of the Master Agreement.

74. In the event that an action for breach of contract does not resolve all of the issues before the Court, Cone Health seeks declaratory judgments pursuant to 28 U.S.C. § 2201(a), as there are actual issues in controversy, the matters are definite and concrete, the parties' positions are defined and adversarial, and the issues are susceptible to judicial determination.

## Count III: Declaratory Judgment (Alternative Claim)

**SPi has Materially Breached the Master Agreement, Breached Its Warranties and Representations, and Breached Supplement 1, and the Material Breaches Cannot Be Cured Within Sixty Days**

75. Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

76.     Cone Health is entitled to a declaration that SPi has materially breached the Master Agreement and Supplement 1 (which breaches cannot be cured within sixty (60) days) on at least one of the following bases: (1) SPi failed to ensure collection of payable claims, resulting in SPi write-offs of approximately $7 million in Cone Health's receivable accounts; (2) SPi failed to assign a dedicated denial management team to review and resolve denials of Cone Health's claims as required by Section V.8. of Supplement 1; (3) SPi engaged in improper billing of Medicaid beneficiaries; (4) SPi failed to provide Cone Health with daily reconciliation of payments received; and (5) SPi failed to provide adequate customer service to Cone Health's patients as required by Section V.10. of Supplement 1.

## Count IV: Declaratory Judgment (Alternative Claim)

### Cone Health Has the Right to Terminate the Master Agreement and Supplement 1 as of August 12, 2013

77.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

78.     Cone Health is entitled to a declaration that it has a right to terminate the Master Agreement and Supplement 1 in whole based on SPi's incurable material breaches of the Agreements and a declaration that the Agreements are terminated as of August 12, 2013, which follows Cone Health's written notice to SPi given on May 10, 2013.

15

## Count V: Declaratory Judgment (Alternative Claim)

### The Master Agreement and Supplement 1 are Terminable
### Without Cause as of August 8, 2014

79.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

80.     The Master Agreement allows its own termination and the termination of any Supplement without cause after August 8, 2014, with six (6) months written notice.

81.     SPi asserts that the duration term in Supplement 1 of five years extends the life of the Master Agreement beyond its explicit deadline of August 8, 2014.

82.     The Master Agreement's terms state that each separate supplemental agreement entered into by the Parties is incorporated by reference into the Master Agreement, and the terms of the Master Agreement are incorporated into each separate supplemental agreement.  If the provisions of a supplemental agreement and the Master Agreement conflict, the provisions of the supplemental agreement prevail only with respect to those services to be provided under the supplemental agreement to Cone Health and/or other entities designated by Cone Health by SPi and, if applicable, any SPi affiliates and subcontractors.  Otherwise, the terms of the Master Agreement prevail. (Master Agreement § 2.1.)

83.     The three year termination provision in the Master Agreement is a term of duration rather than a term describing the specific services SPi will provide.

84.     The termination provision of the Master Agreement governs both the

16

Master Agreement and any supplemental agreement.

85.     Cone Health is entitled to a declaration that it may terminate the Master Agreement and Supplement 1 at any time after August 8, 2014, without cause with six (6) months written notice.

## Count VI: Declaratory Judgment (Alternative Claim)

**Termination Assistance Under the Master Agreement Applies only to Patient Encounters Occurring While the Agreements are in Force**

86.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

87.     The Master Agreement contains a provision by which SPi will provide billing assistance after any supplemental agreement's termination in order to assure a smooth transition to Cone Health's internal billing services or to a successor vendor.

88.     Section 15.5(a) states that after the termination of any supplemental agreement, SPi "shall cease to process new patient charge data on behalf of [Cone Health], but will (i) continue to perform the Services, at the then-current rates hereunder, for a period of one (1) year with respect to all of [Cone Health's] accounts receivable from charges for clinical procedures rendered prior to termination date or the last day charges were entered for the applicable department whichever is later, (ii) thereafter discontinue processing such accounts receivable, (iii) provide reasonable transitional services, and (iv) have no further obligations" to Cone Health.  (Master Agreement §

17

15.5(a).)

89.     This provision requires that SPi continue providing its enumerated services for Cone Health based on patient encounters occurring before the date of termination and that it continue to seek reimbursement for Cone Health for those patient encounters for a period of one year after the termination date.

90.     This provision also requires that SPi continue to process Cone Health's aged accounts, some of which are housed on SPi's IDX software system, and it requires SPi to grant Cone Health access to the data on SPi's IDX software system to the extent necessary for Cone Health to process those claims.

91.     SPi asserts that the Termination Assistance provision grants it the right to continue to provide the services it provided before termination for one year without regard to the termination event.  This interpretation is contrary to the plain language of the Master Agreement and the intent of the Termination Assistance provision.  The provision does not require Cone Health to continue to utilize SPi's services for patient encounters occurring after its relationship with SPi is terminated.

92.     Cone Health is entitled to a declaration that SPi is required under the Master Agreement to provide services related only to patient encounters occurring before the termination date and that Cone Health is not required under the Master Agreement to compensate SPi for any services related to patient encounters occurring after the termination date.

**Count VII: Declaratory Judgment (Alternative Claim)**
**Cone Health is Entitled to Damages Related to its Loss of Revenue, Loss of Existing Physicians, Prospective Physicians, and Patients, and Loss of Good Will Caused by SPi's Breach**

93.     Cone Health adopts and incorporates by reference the allegations contained in the preceding paragraphs.

94.     The Master Agreement provides that SPi's may be liable to Cone Health for direct damages stemming from SPi's errors or omissions in the performance of its services.

95.     Cone Health has suffered damages due to SPi's breaches of the Agreements.  These damages include without limitation loss of revenue, loss of existing physicians, loss of prospective physicians, loss of patients, loss of goodwill and reputation, and potential losses due to fines and penalties.

96.     Cone Health is entitled to a declaration that its loss of revenue, loss of existing physicians, loss of prospective physicians, loss of patients, loss of goodwill and reputation, and any fees and penalties due to SPi's breach of the Agreements are included as direct damages under the Master Agreement.


WHEREFORE, Plaintiff Cone Health prays:

(a)     that the Court enter judgment against SPi for the relief requested in this Complaint in an amount exceeding $5 million;

(b)     that the Court enter declaratory judgment declaring that SPi is in material breach of the Master Agreement and Supplement 1, and that the material breaches cannot be cured within sixty days;

(c)     that the Court enter declaratory judgment declaring Cone Health has a right to terminate the Master Agreement and Supplement 1 and that the Agreements are terminated as of August 12, 2013;

(d)     alternatively, that the Court enter declaratory judgment declaring that the Master Agreement and Supplement 1 are terminable without cause as of August 14, 2014;

(e)     that the Court enter declaratory judgment declaring that SPi is required under the Master Agreement to continue to provide services related to patient encounters occurring before the termination date and that Cone Health is not required under the Master Agreement to compensate SPi for any services related to patient encounters occurring after the termination date;

(f)     that the Court enter declaratory judgment declaring that Cone Health may recover damages for its loss of revenue, loss of existing physicians, loss of prospective physicians, loss of patients, loss of goodwill and reputation, and potential fines and penalties caused by SPi's breach;

(g)     that it be awarded its reasonable attorney's fees and costs associated with bringing this Complaint;

(h)     that it have a trial by jury as to all matters so triable; and

(i)     that it have such other and further relief as the Court may deem just and

proper.

This, the 8th day of August 2013.

<div style="margin-left: 50%;">

/s/ D. Clark Smith, Jr.
_____
D. Clark Smith, Jr.
N.C. State Bar No. 6853
clark.smith@smithmoorelaw.com
Gregory G. Holland
N.C. State Bar No. 19069
greg.holland@smithmoorelaw.com
W. Craig Turner
N.C. State Bar No. 41647
craig.turner@smithmoorelaw.com

*Attorneys for Cone Health*

</div>

OF COUNSEL:

SMITH MOORE LEATHERWOOD LLP
300 North Greene Street  Suite 1400
PO Box 21927 (27420)
Greensboro, NC  27401
Telephone: 336.378.5200
Facsimile: 336.378.5400