IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION d/b/a CONE HEALTH,<br><br>Plaintiff,<br><br>v.<br><br>CONIFER PHYSICIAN SERVICES, INC., f/k/a SPRINGFIELD SERVICE CORPORATION,<br><br>Defendant. | 1:13CV651 |

### MEMORANDUM OPINION AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Parties' Joint Motion for Resolution of Discovery Disputes. (Docket Entry 65.) The parties sought an expedited procedure pursuant to Local Rule 37.1. A hearing in this matter was held on January 26, 2016. (Minute Entry dated 01/26/2016.) For the reasons that follow, the Court will grant the parties' motion and dispose of the pending discovery disputes as set forth herein.

### BACKGROUND

Plaintiff Moses H. Cone Memorial Hospital Operating Corporation d/b/a Cone Health ("Plaintiff" or "Cone Health") filed this action alleging that Conifer Physician Services, Inc. f/k/a Springfield Service Corporation ("Defendant" or "Conifer") breached the parties'

1

Master Outsourcing Services Agreement and Supplement 1 ("Agreement").[1] According to the amended complaint, Cone Health provides health care services through a network of hospitals and physicians in North Carolina. (Am. Compl. ¶ 5, Docket Entry 45.) Conifer provides revenue management, health information management, and billing services to health care providers like Cone Health. (*Id.* ¶ 6.) On August 8, 2011, Cone Health and Conifer entered into a Master Agreement under which Cone Health outsourced certain claims management and account receivable functions to Conifer. (*Id.* ¶¶ 9-10; Ex. A thereto.) The parties executed "Supplement 1" to the Master Agreement, under which Conifer began providing billing and claims management services to physicians owned by, or affiliated with, Cone Health. (*Id.* ¶ 15; Ex. A thereto.) Conifer also agreed to establish specified teams for reviewing denied claims and provide customer service to all of Cone Health's patients. (*Id.* ¶¶ 16-17; Ex. A thereto.) The term of the contract under Supplement 1 is five years. (*Id.* Ex. A.)

On May 10, 2013, Cone Health notified Conifer of several purported breaches of the Agreement and threatened to terminate it for cause if the breaches were not cured to Cone Health's satisfaction within sixty days. (*Id.* ¶ 58.) Under the Agreement, a party has sixty days to cure any alleged breach before the other party can terminate the Agreement for cause. (*Id.* ¶ 56; Ex. A.) The parties then engaged in correspondence regarding Conifer's alleged breach of the Agreement, and Cone Health agreed to suspend termination of the Agreement until August 12, 2013 "while the Parties discussed termination transition resolution." (*Id.* ¶ 63.) Cone Health then filed this action on August 8, 2013. Conifer has asserted a counterclaim

---

[1] Springfield Service Corporation ("SPi") entered the Agreement with Cone Health. In 2014, SPi was purchased by Conifer Health Solution, LLC d/b/a Conifer Health Solutions. Hereinafter, SPi will be referred to as "Conifer."

2

against Cone Health. (Answer & Countercl., Docket Entry 48.) Since late 2014, the parties have engaged in extensive discovery, and an exceptional volume of documents have been produced or reviewed by both parties. On December 30, 2015, the parties filed the pending motion seeking resolution of discovery disputes from the Court. (Docket Entry 65.)

## DISCUSSION

As a general rule, Federal Rule 26(b) provides general provisions regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Discovery rules are to be accorded broad and liberal construction. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Nevertheless, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." FED. R. CIV. P. 26(c)(1). District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988).

### A. Initial Disclosure of Damages

The parties first disagree with the adequacy of Conifer's initial damage disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). According to Rule 26(a)(1)(A)(iii), a

3

party must disclose "a computation of each category of damages claimed" and "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii). Additionally, Rule 26(e) requires a party to "supplement or correct its disclosure or response" if it learns in a timely manner that its disclosures or responses are "incomplete or incorrect" and the correct information is not known to the other party, or by order of the court. FED. R. CIV. P. 26(e)(1); *see also Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, No. 1:13CV645, 2015 WL 4726866, at *3 (M.D.N.C. Aug. 10, 2015). Here, it has been 16 months since Defendant made its initial disclosures. At the hearing, Defendant agreed to supplement its Rule 26(a)(1)(A)(iii) initial disclosure of computation of damages by the end of January 2016. If Defendant has not yet done so, Defendant must supplement its response no later than February 10, 2016 at 5:00 p.m.

**B. Document Requests 67 and 68 and Interrogatories 10 and 11**

Next, Plaintiff seeks to compel Defendant to produce documents pertaining to Document Requests 67 and 68, along with Interrogatories 10 and 11. Document Request 67 and 68 state the following:

> 67. All documents concerning or related to the training of [Defendant's] employees and representatives who provided customer service to [Plaintiff's] patients pursuant to the Master Agreement and/or Supplement 1.
>
> 68. All documents concerning or related to [Defendant's] procedures and/or policies used to evaluate whether the personnel providing service to [Plaintiff] were fully familiar with the technology, process, and procedures used to deliver [Defendant's] services.

(Ex. C, Docket Entry 65-3 at 5.) Interrogatories 10 and 11 state the following:

> 10. Please list the policies, procedures, metrics, quality standards and/or production standards applicable to [Defendant's] representatives, employees, or agents who provided service to [Plaintiff].

4

> 11. Please identify how [Defendant] determined whether the representatives, employees, and agents who provided service to [Plaintiff] were fully familiar with the technology, process, and procedures used to deliver [Defendant's] services.

(Ex. E, Docket Entry 65-5 at 4.) In its original response to Document Request No. 67, Defendant states:

> In addition to its General Objections, [Defendant] objects to this request on the grounds that it is overboard, unduly burdensome, and seeks documents that are not relevant and otherwise not reasonably calculated to lead to the discovery of admissible evidence. Among other things, this request ask for all documents concerning or related to the training of [Defendant's] employees and representatives who provided customer service to [Plaintiff's] patients pursuant to the Master Agreement and Supplement 1, which is not an issue in the Complaint or Counterclaim.

(Ex. C, Docket Entry 65-3 at 5.) As to Document Request No. 68, Defendant's states:

> In addition to its General Objections, [Defendant] objects to this request on the grounds that it is overboard, unduly burdensome, and seeks documents that are not relevant and otherwise not reasonably calculated to lead to the discovery of admissible evidence. Among other things, this request asks for all documents concerning or related to [Defendant's] procedures and/or policies used to evaluate whether the personnel providing service to [Plaintiff] were fully familiar with the technology, process, and procedures used to deliver [Defendant's] services, which is not at issue in the Complaint or Counterclaim.

(*Id.*) As to Interrogatory No. 10, Defendant's states:

> [Defendant] objects to Interrogatory No. 10 because it seeks information that is: (a) outside the relevant timeframe; and (b) neither relevant to any claim or counterclaim asserted herein nor reasonably calculated to lead to the discovery of admissible evidence.

(Ex. E, Docket Entry 65-5 at 4.) As to Interrogatory No. 11, Defendant states:

> [Defendant] objects to Interrogatory No. 11 because it seeks information that is: (a) outside the relevant timeframe; and (b) neither relevant to any claim or counterclaim asserted herein nor reasonably calculated to lead to the discovery of admissible evidence.

5

(*Id.*)

Document Requests 67 and 68, and Interrogatories 10 and 11 concern a specific section of the Complaint which sets out the factual allegations of Defendant's failure to provide adequate customer service to patients. (*See* Am. Compl. ¶¶ 48-54.) Plaintiff alleges that "[Defendant] agreed to field [Plaintiff's] patients' requests for additional information regarding [Plaintiff's] charges and their questions regarding billing statements." (*Id.* ¶ 49.) Plaintiff further alleges that "[Defendant] referred [Plaintiff's] patients to [Plaintiff's] Affiliated Health Care Providers to answer billing questions [Defendant's] employees should have answered." (*Id.* ¶ 50.) Thus, Plaintiff seeks the information sought after in interrogatories 67 and 68 to prove the allegations in the complaint pertaining to customer service.

As to Document Request No. 67, the Court finds the request, as written, is overbroad. However, the Court does find that is it appropriate for Defendant to produce customer service training records specifically pertaining to patient billing and claim denials as it is relevant to Plaintiff's claims. (*See* Compl. ¶¶ 28-29, 35-40, 48-54.) Thus, Defendant shall supplement its response accordingly.

As to Document Request No. 68, the Court compels Defendant to supplement its response. In its original response, Defendant states that its policies and procedures used to determine whether an employee is competent to deliver Defendant's services is not at issue in the complaint or the counterclaim. However, in its amended complaint, Plaintiff specifically alleges that Defendant "failed to use personnel who [were] fully familiar with the technology, process and procedures to be used to deliver its services." (Am. Compl. ¶ 53.) Because documents regarding how Defendant's employees were evaluated are relevant to these

6

allegations, Defendant will be required to supplement its response. *Rayfield Aviation, LLC v. Lyon Aviation, Inc.*, No. 1:11CV274, 2012 WL 3095332, at *3 (M.D.N.C. July 30, 2012) (compelling defendant to provide documentation "which relate to the parties' dispute under the [a]greement").

As to Interrogatories 10 and 11, the Court finds that the interrogatories are relevant to issues highlighted in Plaintiff's complaint regarding Defendant's failure to use competent personnel. Thus, Defendant must supplement its responses, but only provide information up to the date that the contract was terminated on August 12, 2013.

### C. Document Requests 107 and 108

Plaintiff request the Court to compel Defendant to produce documents pertaining to Document Requests 107 and 108, which seek Defendant's profit and loss statements and tax returns from 2011 to present. (Ex. C, Docket Entry 65-3 at 6.) Defendant objects on grounds of relevancy. Plaintiff contends that these documents are needed to conduct a meaningful analysis of what profits were lost in respect to this contract as opposed to "something else." Defendant contends that a companywide tax return will not reveal revenue or expenses obtained specific to this contract. Defendant further argues that no allocation of revenue or expenses would be identified on a company-wide profit and loss statement. At the hearing, Defendant advised the Court that it intends to produce documents regarding its revenues and expenses from the contract. Defendant also intends to produce documents concerning expected revenues not obtained as a result of termination of the contract. The Court finds that Plaintiff's document requests, as written, are overbroad and that company-wide financial statements and tax returns will not reasonably lead to relevant information pertaining to the

7

contract between the parties. FED. R. CIV. P. 26(b)(1). However, the Court will require Defendant to supplement its responses and produce documents solely to the extent that it contains information related to Moses Cone from years 2011-2013.

### D. Production from Custodians After August 12, 2013 and from New Custodians

Plaintiffs have requested defendants to "produce, as appropriate, documents created later than August 12, 2013 from all of its custodians, as well as electronically stored information belonging to [four new] document custodians . . . ." (Mot. at 3, Docket Entry 65.) According to Defendant, the parties "heavily negotiated for an extensive period of time" about how to produce documents, what search terms were going to be used, and which custodians would be subject to discovery. According to the Defendant, in response to 138 document requests, Defendant reviewed approximately 500,000 records which totaled millions of pages. Subsequently, Defendant produced over 100,000 documents and almost half a million pages. Moreover, the parties agreed to a list of 22 custodians and that the documents produced would be dated from November 18, 2010 to August 12, 2013. (*See* Joint Stipulation and Order Re E-Discovery at I.A, Docket Entry 44-1.) Although refuted by Plaintiff, Defendant contends that it would take months to produce the requested documents. In light of the parties' extensive negotiations regarding production and the burden placed on Defendant to produce these documents, the Court will not compel Defendant to produce documents pertaining to all of the listed custodians created later than August 12, 2013.

As to Plaintiff's request for documents from four new custodians, two of the custodians were disclosed to Plaintiff a year ago before production of discovery began. However, Plaintiff failed to include them in the list of 22 custodians required to produce

8

documents. Furthermore, Plaintiff has already obtained 14,000 documents sent or received by these new custodians. Plaintiff also received an additional 5,000 documents pertaining to these custodians resulting from negotiations requiring Defendant to produce documents for Plaintiff's third party consultant for private health information under HIPAA. Thus, granting Plaintiff's request at this late period would unduly burden Defendant in light of Plaintiff already receiving approximately 19,000 documents regarding the four new custodians. *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ–11–2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, all discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C)") (internal quotation and citation omitted). Therefore, Defendant will not be compelled to supplement its response.

### E. Requests to Clawback Documents

Lastly, pursuant to a "clawback provision" in the parties' stipulated order (Docket Entry 58 at 3-4), Defendant seeks to clawback certain documents that Plaintiff received. The documents at issue are grouped into three categories. The first category is correspondence between Conifer officers and board members regarding an estimate of the company's earnings before interest, taxes, depressions, and amortization ("EBITDA"), a description of a conversation between the CEO and Plaintiff's attorney, and emails regarding different contract provisions.[2] The second category concerns an email from the CEO to a board member about a settlement solution and two emails regarding how to respond to Plaintiff's letter regarding Defendant's non-performance and breach.[3] The third category of documents

---

[2] These are documents: SPI00172112, SPI00169989, SPI00169994, SPI00173015, and SPI00173020. (Joint Motion of Resolution ¶ 7a, Docket Entry 65-1.)

[3] These are documents: SPI00172114, SPI00045872, and SPI00045873. (*Id.* ¶ 7b.)

9

are from powerpoints regarding Defendant's companywide presentation for a proposed 2012 budget.[4] Defendant contends that the first and second categories are protected work product, protected by the attorney-client privileged, or irrelevant documents. Defendant further contends that the third group of documents are irrelevant to this matter.

"In order for materials to qualify for the protection of the work-product doctrine, the proponent of the protection must demonstrate the materials are (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for the party or the party's representative." *United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 WL 3932167, at *3 (E.D.N.C. June 25, 2015) (internal quotations and citations omitted). On the other hand, the attorney-client privilege:

> applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Liggett Grp., Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 210 (M.D.N.C. 1986).

Regarding the first category of documents, the Court denies Defendant's request to clawback document SPI00172112. This document is an email between Conifer officers regarding Conifer's estimated EBITDA without Plaintiff. At the end of the document a Conifer officer suggest that Conifer "look at some additional overhead expense reductions to

---

[4] These documents are: SPI00184803, SPI00118344, SPI00184463, SPI00184770, SPI00184787, SPI00184814, and SPI00184811. (*Id.* ¶ 7c.)

reduce the expected shortfall." The document is relevant because it describes how the termination of the contact directly impacts Defendant. The document is a conversation between Conifer's officers. Therefore, the attorney-client privilege does not apply. Lastly, the document is not protected work product because it was not "prepared in anticipation of litigation or for trial." The officers are discussing how to reduce the impact of the loss of the contract, not how to calculate damages for litigation. *Bertie Ambulance Serv., Inc.*, 2015 WL 3932167, at *3. Thus, Defendant's request to clawback document SPI00172112 is denied. However, the Court grants Defendant's request to clawback the other documents in category one (*see* footnote 2). The information contained in these documents are either protected work product or protected by the attorney-client privilege. Thus, Defendant's clawback request for the documents other than SPI00172112 in the first category are granted.

The second category includes three documents (*see* footnote 3). The first document is a summary regarding a discussion between two of Conifer's officers about their efforts to settle the dispute between the parties. This document is protected work product because it describes Defendant's strategy to settle the dispute in anticipation of litigation. The second and third documents are emails describing edits to a revised response to Plaintiff's demand letter for non-performance and breach. Because these documents concern revising a response to a demand letter, they were made in anticipation of litigation. The Court concludes that documents in category two are protected work product, thus Defendant's clawback request is granted.

Finally, the third category of documents is irrelevant. The documents are portions of a PowerPoint presentation regarding Defendant's companywide proposed budget for 2012.

11

The document is barely legible and rarely mentions Plaintiff. Furthermore, the document does not reveal information about revenue or expenses pertaining to the contract. Therefore, the Court finds this document irrelevant and grants Defendants request to clawback the documents.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that parties' joint motion (Docket Entry 65) is **GRANTED**. The parties shall adhere to the Court's resolution of discovery disputes as set forth herein. As to Defendant's initial disclosure of damage computations pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Defendant shall supplement its disclosure no later than **Wednesday, February 10, 2016 at 5:00 p.m.** All other required supplementations shall be provided no later than **Monday, February 29, 2016 at 5:00 p.m.**

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 37(a)(5), both parties shall bear their own costs and fees in making this joint motion.

Joe L. Webster<br>
United States Magistrate Judge

February 3, 2016
Durham, North Carolina

12

Case 1:13-cv-00651-JLW   Document 68   Filed 02/03/16   Page 12 of 12